María Luisa Delgado de Heyliger, Plaintiff and Appellee, *v.* Minnie M. Miller, Defendant and Appellant.

No. 6508.  Argued November 27, 1934.—Decided December 14, 1934.

*Arturo Ortiz Toro* for appellant.  *Enrique Báez García* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

María Luisa Delgado widow of Heyliger claims the possession of a certain parcel of land. It is alleged that plaintiff was in possession, within the year preceding the filing of the complaint, of a property described in detail and which has an area of 1 acre (*cuerda*) more or less. It is added that

on or about April 20, 1932, defendant, Minnie M. Miller without the consent and against the will of plaintiff entered, with the help of two laborers, on said property, extending a wire fence from the boundary in the north to the boundary in the south, pulling out the hedges (*mayas*) growing on the land, and depriving plaintiff of a parcel of land included in the new fence which is described as follows:

"North, a channel; South, the Boca Negra alley which goes to the sea; on the East, the remaining part of the parcel where the gasoline service station is built; and on the West by the coast. Said parcel is divided in two portions: One, the largest, on the South and which has 1749.71 square meters, be'ng 27.92 meters on the North, by the South 23.81 meters, by the East, 90 meters and by the West 94.84 meters, and the other, the smallest parcel which is on the North, which has a triangular shape with 96.27 square meters, measuring by the Northeast 11.50 meters, by the Southeast 18.60 meters and by the East 17.10 meters."

It is also alleged that defendant has been occupying the said parcel against the will of plaintiff, who has been deprived of her possession and enjoyment, intending to construct buildings on said parcel and ordering persons placed thereon by said defendant to cultivate the same.

Although in paragraph 1 of the complaint the possession and not the ownership of the parcel described therein is alleged, defendant, however, denies that plaintiff is the owner of said parcel and states on the contrary that the same belongs to the People of Puerto Rico and is a part of a lot of 3,286 square meters described in the answer.

Defendant denies that she entered on the parcel described in paragraph 1 of the complaint against the will of plaintiff on the 20th day of April, 1932, nor on any other date, and alleges that on said day, with the consent and knowledge of plaintiff, she built a wire fence in the dividing line between a parcel of land leased by the People of Puerto Rico to defendant and the remaining part of the parcel described in paragraph 2 of the answer, which was leased to plaintiff

herself from the year 1917 until November 1930. Defendant also alleges that said dividing line was fixed and marked before April of the year 1932, by mutual agreement with The People of Puerto Rico, according to the plan made by the engineers of the Department of the Interior on April of the year 1931, with the consent of plaintiff herself.

The lower court sustained the complaint and ordered that plaintiff be reinstated in the possession of the parcel of land object of this suit. Several errors are attributed to the lower court, the first relating to the evidence. It is claimed that manifest error was committed in weighing the evidence.

■■ There is no doubt that plaintiff was in possession of the parcel of land occupied by defendant. Isabel Heyliger Delgado testified that the land in question had been fenced since remote times and that said fences were pulled out by Mrs. Minnie Miller. Defendant herself testifies that in her presence the port captain told doña Luisa as follows: "The strip of land of 20 meters of the People of Puerto Rico was leased by Minnie and she is going to take possession; as you have fenced it, you are requested to remove your fence so that this lady may place hers."

The said defendant admitted, through her attorney, during the hearing of this case, that she had removed the fence of hedges (*mayas*) and placed a wire fence in a direction from North to South. Mrs. Miller lays great stress on the fact that plaintiff was in possession of this land as lessee of The People of Puerto Rico, who finally leased it to said defendant. Even though the People of Puerto Rico be the owner of this land and although it has leased it to María Luisa Delgado, it is clear that it can not forcibly deprive the plaintiff of the material possession to deliver it to the new lessee. When a lessee refuses to deliver the material posession to his lessor, the law grants a remedy, which is the unlawful detainer proceeding, and resort must be made to it to obtain through the courts the material possession of the

real property leased. If the lessor can not obtain by force the material possession in case of detention, neither can he deliver said possession to a new lessee.

■ It is claimed, however, that defendant took possession of the land with the knowledge and consent of plaintiff. It is argued by the fifth error, which we will discuss together with the first, that the court did not consider the presumptions of Subdivisions 5 and 15 of Section 102 of the Law of Evidence, by which it is presumed that all evidence willfully suppressed will be adverse if produced and that the duties of an office have been regularly complied with. Defendant argues that plaintiff began by suppressing her own testimony, that of her attorney when the facts occurred, Mr. Arnaldo, and of the peon who according to the witnesses of defendant was sent by plaintiff to witness the measurement of the land. Even though it is presumed that all evidence willfully suppressed would be adverse if offered, however, we believe that the evidence of defendant herself, considered apart, may serve as a basis to justify the conclusions of the trial court. Said court declares that the plaintiff never gave her consent for defendant to enter or the property and perform on the same the acts of possession mentioned, but that, on the contrary it was established that plaintiff always objected orally and by writing, to the acts of Mrs. Miller.

The witness Enrique Castro testified that he reminded the plaintiff that she had made an agreement with The People of Puerto Rico as to a strip of land of 20 meters and that he was going to mark off for Mrs. Minnie the said strip of land, that the lady objected and said no, that said land belonged to her and that the witness told her to remember that she had made an oral agreement with Mr. Huyke, the plaintiff answering that she accepted; that then said lady told her son-in-law to go and bring a lawyer and Mr. Arnaldo, the lawyer, came and that doña Luisa did not deny and permitted the witness to mark off the 20 meters on the land; that

he told doña Luisa to come and see it, and she answered no, that she was ill, but that she sent a peon, and the witness, with Mr. Trujillo and the peon, marked the line of the 20 meters and then left.

The witness Trujillo Lange testified as follows:

"Q—What has been your intervention?

"A—The engineer Enrique Castro called for me one day at my office to accompany him to give possession of a strip of land of 20 meters, of the People of Puerto Rico, to Mrs. Minnie Miller, who had leased it from the People of Puerto Rico. I accompanied him, and went to the house of the widow of Heyliger, and there Mr. Castro and myself informed her our purposes, and she accepted the lease, and then sent a person to indicate to us the boundaries and we went on the land and there I held the measuring tape while Castro measured the strip of land.

"Q—Of what land?

"A—Of the strip of land of 20 meters which bounds with doña Luisa and the maritime zone.

"Q—And on the South and North, with whom does it abut?

"A—With other lands of the People of Puerto Rico.

"Q—Separated by what?

"A—By a road. There was none at that time.

"Q—What area did the strip of land leased have?

"A—I do not know. There is a strip of land of 20 meters.

"Q—Was possession given to Mrs. Minnie?

"A—Oh Yes! and doña Luisa expressed her assent and later Mrs. M'nnie came to my office to inform me that they would not permit her to put the wire fence, and then I told her I was at her service, and we went to the house of Mr. Alfredo Arnaldo. . . . No. Finally, after some things we went to her about 3 P. M., and there was Mr. Arnaldo the lawyer with a letter from the Commissioner which letter was read.

"Hon. Judge: What happened there? Were you on the land?

"Q—After the letter was read what was the attitude of doña Luisa?

"A—She expressed her assent, to which she give her word, that she agreed to it, and gave Mrs. Minnie an apology, and later I learned of this suit."

From the testimony given by defendant Minnie M. Miller we copy the following:

"Q—And when did you acquire possession of the property?

"A—In possession, I took with me the representative of The People of Puerto R:co in Mayagüez, who is Jesús Trujillo and we went there. As Doña Lu:sa Delgado had under a lease the strip of land. . . .

". . . . . . . . . .

"A— . . . . We went to the Heyliger house. Then the Port Captain spoke—I did not speak—and told her 'doña Luisa, the strip of land of 20 meters which belongs to the People of Puerto Rico was leased to Minnie'—he knows me and we have a certain familiarity —and spoke thus: 'she is going to take possession. As you have fenced it, please remove your fence so that this lady may put her fence, and she objected stating that said land had belonged to her for a long time and I agreed and paid no attention. I went home and wrote to the Department asking for an explanation, and instead of answering Mr. Eduardo Castro came with Jesús Trujillo Lange and they came to may house and he told me that the Department had received my letter and that he was going to the house of doña Luisa to inform her that she had accepted the agreement she had made with The People of Puerto Rico; that she knew that the strip of 20 meters belonged to the People of Puerto Rico; that she had a year to lease it and that I had leased it, and he went there and she did not agree. Then Mr. Castro told her: 'doña Luisa, I came here for you to accept or refuse the agreement you made with the People of Puerto Rico. Through your attorney, did you accept or did you not accept?' And she said: 'I never take back my word, I accepted the agreement leav:ng the strip of 20 meters for the People of Puerto Rico, but I do not admit that this lady accepts it, because I have an option,' and he told her. 'You had a year to do it, but you did not do so.'

"Q—So that she did not object to your taking possession?

"A—She did not object, she accepted.

"Witness:

"Later, when Mr. Castro and the Port Capta:n spoke to her she said: 'All right;'°and then Mr. Castro told her: 'I am going to mark the boundaries so that this lady my place the fence; if you desire to send some one of your family to witness it, you may do so,' and

she sent a peon, and then in my presence and of Mr. Castro and one of her peons the boundaries were fixed to put the fence.

"Q—So that said peon was with you all?

"A—Yes, sir, behind, on the side, in front, and watching.

"Q—Were the boundaries marked?

"A—Yes sir, then Mr. Castro marked the boundaries about 4 or 5 meters so as not to alter the line."

The statements of the witnesses of defendant do not reveal in plaintiff a disposition to permit the acts of possession exercised by Mrs. Miller. Her state of mind is more one of objection than of consent. Her attitude does not show that she wilfully abandoned possession of the land. The testimony of Mrs. Miller, being the defendant, deserves preferred attention. Her words, which seem to be nearer to the truth, more than consent tend to show objection on the part of plaintiff. It is not strange that these witnesses, who by reason of the nature of their testimony may not have been believed, may have created doubts in the mind of the trial judge.

Sometime after the visit of Castro to the home of plaintiff, she appears writing to the Commissioner of the Interior the following letter, which was offered in evidence by defendant:

"I take the liberty of informing you of what is happening.—My property abuts with the maritime zone, by the West, as it appears in my deed or title of ownership, presented to that department when the request to determine the boundaries was made.—Your predecessor Mr. Esteves, ordered the boundaries to be determined the same as that of the 'Shell' gasoline company, and to that of Mr. Félix Rexach for the pier works, leaving 20 meters for the maritime zone.—Please inform me what lands have been leased to Minnie Miller by Mr. Gustavo Ramírez de Arellano, Acting Commiss'oner, for said lady wants to take possession of the land which belongs to me and she has had my wire fences removed.—The Hon. Judge, Mr. Pablo Berga has read my titles of ownership which were shown to him by my daughter Mrs. Isabel Heyliger Grigg. The engineer Mr. Fortuño and Mr. Franc'sco D. Márquez can also tell you of the cooperation I have given for the construction of the roads of this beach and that which

crosses my lands and joins road No. 2.—Please, Honorable Sir, come to this beach when you come to this city and I will be pleased to show you on the land, the abuse said lady is committing with me in name of the People of Puerto Rico.—Awaiting for an answer, I remain,

"Yours very truly,

"(s)   María Luisa D. de Heyliger."

The surveyor Mr. Castro was instructed to go to Mayagüez in the middle of April, 1932, and the preceding letter is dated June 29 of the same year.

On this evidence and that offered by plaintiff the lower court based its conclusions.

Isabel Heyliger Delgado, daughter of the plaintiff, testified that she objected to the purposes of defendant when the latter and the port captain came to her house and later when they returned accompanied by Mr. Eduardo Castro, the engineer, who according to the captain had been sent by the Department to measure the parcel of the maritime zone.

Defendant testified that after doña Luisa Delgado had agreed, two or three days later her peons began to clean the strip of 20 meters and that when they were working Isabel Heyliger came and told her: "Everybody out;" and that as she mentioned the district attorney she went to said officer and asked him, but that the district attorney did not intervene with her. Isabel Heyliger testified that when the fences were removed a watchman called Juan Valentín lived on the property; that her mother was in town and that the witness saw the district attorney to inform him of the happenings.

Rufino Colón describes the property where he has his home, he states that on said property of one and a half acre Arcadio Ramírez has a gasoline service station, and that when Mrs. Miller was putting the fences Mrs. Isabel Heyliger arrived and stopped the one who was cutting the hedges (*mayas*). He also testified that his house was enclosed in

what Mrs. Miller occupied and that the parcel of land on which he lives belongs to Mrs. Luisa Delgado, has coconut palms on it and that he has some cows.

César Ruiz testified that when he was pulling out some hedges (*mayas*) by order of Mrs. Miller on the strip of land she measured Mrs. Isabel Heyliger arrived and inquired who had ordered said hedges to be pulled out, that the witness answered that Mrs. Minnie and that then he stopped pulling out the hedges.

In view of the evidence offered as to the alleged consent of Mrs. Delgado and her attitude right after the visit of the officers of the People of Puerto Rico to her home, as well as of all the evidence in the record, we are inclined to believe that we must not alter the opinion of the lower court. In the letter written to the Commissioner of the Interior the plaintiff states that Mrs. Miller wants to occupy lands which belong to her and that she has ordered her wire fences removed, and mentions the abuse that she is committing with her. These words do not indicate a consent. Her subsequent acts reveal the contrary. In view of the evidence offered it is possible that plaintiff refrained from testifying as a witness, because she did not believe that a case had been established in favor of defendant after this evidence was offered. The court *a quo* has rendered its judgment and we are not in condition to be able to say that it committed manifest error in weighing said evidence.

The second assignment of error lacks importance. It is based on that the court granted the continuance of the trial. After plaintiff had offered some evidence, the court, on Friday, September 23, 1932, continued the trial until Monday the 26th of the same month. The error assigned must be dismissed.

The third error assigned is based on that the court did not decide that plaintiff was estopped to attack the possession of defendant, after inducing her to believe that she was the lessee of a parcel of land which formed part of that oc-

cupied by defendant. We do not see in what the estoppel consists. Mrs. Miller alleged that plaintiff leased from The People of Puerto Rico a parcel of land of 3,286 meters and that the land occupied by her formed part of this parcel lately leased to defendant. In order to prove said allegation she offered in evidence a contract executed between plaintiff and The People of Puerto Rico, represented by the Commissioner of the Interior. Even though the land in dispute formed part of said parcel, on which fact there is some controversy, we can not understand how by the fact that she is a lessee the plaintiff is estopped to object to the possession of defendant. As we have already said, when the lessee detains the property, the lessor can not take the justice in his hands. He must resort to the courts of justice to establish his right. This error must be dismissed.

The fourth error assigned is based on that the lower court failed to apply to the evidence the provisions of Sections 21 and 162 of the law of evidence. According to Section 21, a witness is presumed to speak the truth although this presumption may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honestly, or integrity, or his motives, or by contradictory evidence. We do not believe that the court *a quo*, in deciding the case, acted against the presumptions established by the law of evidence. It weighed the evidence, established its conclusions and rendered its opinion, because it believed that plaintiff was deprived of the possession of her property against her will. Section 162 of said law provides that in civil cases the affirmative issue must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of proof. Plaintiff established the possession of the land without doubt. Defendant did not prove to the satisfaction of the court that she had taken possession of the land with the consent of plaintiff as alleged in her answer. The alleged error must be dismissed.

■ The sixth error assigned is based on that no record was made of the ocular inspection or view which took place with the presence of plaintiff assisted by her attorney and defendant also personally and represented by lawyer Arturo Ortiz Toro, Acting Attorney General of Puerto Rico. Defendant did not call the attention of the judge to make the record of the inspection nor did she take any exception at that time or later, to the omission of the court to make said record. Anyway this error is not so important so as to cause the reversal of the judgment. The seventh and last error is based on the failure of the court to decide that the People of Puerto Rico having an adverse interest to plaintiff in this case and being the party from whom defendant acquired possession this action did not lie. The defense is made that the People of Puerto Rico, having an interest adverse to plaintiff, has not given its consent to be sued. Aside from the fact that no person, including the People of Puerto Rico, is authorized to take justice in his hands, and without stopping to consider the scope of the first section of the Act to Authorize Suits in Certain Cases against the People of Puerto Rico, approved in 1916 and amended in 1928, we are of the opinion that the lower court did not commit the error attributed to it, as it is an injunction to recover the possession, addressed exclusively against Mrs. Miller, who is in material possession of the parcel of land claimed.

The judgment appealed from must be affirmed.

DISSENTING OPINION OF MR. JUSTICE ALDREY

The evidence establishes in my judgment that defendant is in possession of the lot referred to in the complaint because possession of the same was given to her by the engineer Enrique Castro with the knowledge and consent of plaintiff, who arranged to have one of her employees present on said occasion and who witnessed the delivery of possession. If later plaintiff repented of having consented in that said land, which she had under lease from the People of Puerto Rico,

be delivered to defendant, this is a question which can not affect this action.

Plaintiff did not testify at the trial and the only witness she offered did not contradict the evidence of defendant as to the consent to which we have referred.

The judgment appealed from should have been reversed and judgment rendered in favor of defendant.